Donald S. Edgar, Esq. (SBN 139324)
Jeremy R. Fietz, Esq., of counsel (SBN 200396)
Rex Grady, Esq. (SBN 232236)
**THE EDGAR LAW FIRM**
408 College Avenue
Santa Rosa, CA 95401
Telephone: 707-545-3200
Facsimile: 707-578-3040

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SABRA HANIEF, an individual, and MOHAMMED HANIEF, an individual, | Case No.: 13 1360 JCS |
| Plaintiffs, | **COMPLAINT FOR:** |
| | 1. **STRICT PRODUCTS LIABILITY** |
| vs. | 2. **NEGLIGENCE** |
| | 3. **BREACH OF WARRANTY** |
| | 4. **LOSS OF CONSORTIUM** |
| BAUSCH & LOMB, INC., an incorporated business entity; and BAUSCH & LOMB PHARMACEUTICALS, INC., an incorporated business entity, | **DEMAND FOR JURY TRIAL** |
| Defendants. | |

COMPLAINT                                CASE NO:

Page 1 of 15

Plaintiffs SABRA HANIEF and MOHAMMED HANIEF bring this Complaint and allege as follows.

## I.

## PARTIES

1. Plaintiff SABRA HANIEF is an adult individual who, at all times relevant to this Complaint, was and is a resident and domiciliary of the City of South San Francisco, in the County of San Mateo, in the State of California.

2. Plaintiff MOHAMMED HANIEF is an adult individual who, at all times relevant to this Complaint, was and is a resident and domiciliary of the City South San Francisco, in the County of San Mateo, in the State of California.

3. Defendant BAUSCH & LOMB, INC., is a corporate entity which, at all times relevant to this Complaint, was and is a resident and domiciliary of the State of New York, and was authorized to do, has regularly done, and is doing, business within the County of San Mateo, in the State of California.

4. Defendant BAUSCH & LOMB PHARMACEUTICALS, INC., is a corporate entity which, at all times relevant to this Complaint, was and is a resident and domiciliary of the State of Florida, and was authorized to do, has regularly done, and is doing, business within the County of San Mateo, in the State of California.

5. Defendants BAUSCH & LOMB, INC. and BAUSCH & LOMB PHARMACEUTICALS, INC., are hereinafter referred to as "Defendant BAUSCH & LOMB"  To the extent that the Complaint alleges wrongdoing against "Defendant" or "Defendants" or "Defendants BAUSCH & LOMB," it is referring to each named Defendant.

6. In doing the things alleged in this Complaint, Defendants, and each of them, acted as the agents, servants, employees and alter-egos of their Co-Defendant. Defendants, and each of them, acted within the course and scope of

COMPLAINT                                          CASE NO:
Page 2 of 15

their agency and employment, and acted with knowledge, consent and approval of their Co-Defendant, and each Co-Defendant ratified the conduct of the other Defendant.

## II.
## JURISDICTION AND VENUE

7. This Court has jurisdiction over the Defendants named in this Complaint because diversity of citizenship exists with respect to the Plaintiff and each named Defendant in that Plaintiffs are citizens of the State of California and the two named Defendants are citizens of States other than California (to wit, New York and Florida respectively). This Court also has jurisdiction over this matter because the amount in controversy is in excess of $ 75,000. (28 USC § 1332).

8. This Court is the correct venue because the geographic territory of the District in which this Court sits is where a substantial part of the events or omissions giving rise to the Plaintiffs' claims occurred. (28 USC § 1391).

## III.
## GENERAL ALLEGATIONS

9. At all times relevant to this Complaint, Defendant BAUSCH & LOMB was in the business of designing, manufacturing, marketing, distributing and selling two over-the-counter nonsteroidal anti-inflammatory analgesic drugs called SULFACETAMIDE SODIUM 10% OPHTH DROPS and POLYMYXIN B/TMP EYE DROPS (hereinafter referred to as "the PRODUCTS") to consumers and users in California and throughout the United States through various distributors.

10. On or about March 27, 2011, Plaintiff SABRA HANIEF, an adult woman with no known drug allergies, contracted and began exhibiting signs and symptoms related to the condition known as "pink eye." She contacted her physician via phone on the morning of March 27 regarding her signs and

COMPLAINT                                CASE NO:
Page 3 of 15

symptoms and was instructed by her physician to obtain SULFACETAMIDE SODIUM 10% OPHTH DROPS and POLYMYXIN B/TMP EYE DROPS (i.e. the PRODUCTS) and administer these to both eyes. Plaintiff obtained and administered the PRODUCTS the same day and afterward in accordance with the materials and instructions included with the drug.

11. On or about March 27 or March 28, 2011, after administering the PRODUCTS to her eyes, Plaintiff SABRA HANIEF developed a fever that rose to 105 degrees and began exhibiting swelling in her lips and redness in her eyes. On March 29, she went to Kaiser Hospital in Santa Clara, where she was admitted for treatment of her emergent condition. Swelling and discoloration appeared throughout her body, including chest, forearms, palms of both hands and in her mouth. By April 4, 2011, it was evident that she had suffered severe corneal damage. She was transferred to the hospital's surgical unit where she underwent surgery to repair her damaged eyes. Despite medical intervention, her eyes have suffered severe and permanent damage, as have other parts of her body. She continues to require medical treatment and takes medication on a daily basis to ameliorate the permanent damage she has suffered.

12. Plaintiff SABRA HANIEF was subsequently diagnosed with Stevens-Johnson Syndrome and Erythema Multiforme resulting from use of the PRODUCTS.

## IV.
## CAUSES OF ACTION
### FIRST CAUSE OF ACTION
#### STRICT PRODUCTS LIABILITY
**[By Plaintiff Sabra Hanief Against Defendant]**

13. Plaintiffs re-allege as though fully set forth at length and incorporate by reference into this Cause of Action all of the allegations and statements

contained in the preceding paragraphs of this Complaint.

14. At all times relevant to this Complaint, Defendant BAUSCH & LOMB, by and through its officers, directors, employees and/or managing agents, was the manufacturer, fabricator, designer, assembler, tester, distributor, seller, inspector, marketer, warranter, and/or advertiser of the PRODUCTS, which contained design and/or manufacturing defects, and which were capable of causing, and in fact, did cause personal injuries to the users and consumers thereof, while being used in a manner reasonably foreseeable, thereby rendering same unsafe and dangerous for use by the consumer and user. Defendant BAUSCH & LOMB, by and through its officers, directors, employees and/or managing agents, also failed to provide adequate warnings or instructions to the medical community, consumers and users of the products concerning the risk of Stevens-Johnson Syndrome, Erythema Multiforme and other serious adverse reactions associated with the use of the PRODUCTS even though Defendant: (1) knew and had known about the connection between the drug and these severe, potentially fatal reactions since the late 1980's; (2) knew and had known the medical literature for years had shown a connection between Stevens-Johnson Syndrome/Erythema Multiforme and the drug; (3) knew from their own clinical trials of the PRODUCTS that the drug caused cases of Stevens-Johnson Syndrome; and (4) had warned about Stevens-Johnson Syndrome in their drug package insert for the prescription form of the drug before Defendant began distributing the PRODUCTS over the counter.

15. Defendant BAUSCH & LOMB, by and through its officers, directors, employees and/or managing agents, designed, manufactured, marketed, distributed the PRODUCTS, to its retailers and customers, even as Defendant's officers, directors, employees and/or managing agents, and each of them, knew or had reason to know that the PRODUCTS had inherent design flaws. Specifically,

COMPLAINT                                               CASE NO:
Page 5 of 15

Defendant BAUSCH & LOMB by and through its officers, directors, employees and/or managing agents, knew the ordinary and expected uses of the PRODUCTS could and would cause Stevens-Johnson Syndrome.

16. Prior to March 27-28, 2011, the officers, directors, employees and/or managing agents of Defendant BAUSCH & LOMB were aware of the high frequency of Stevens-Johnson Syndrome and Erythema Multiforme and the risk of injury or death to consumers and users of the PRODUCTS. The officers, directors, employees and/or managing agents of Defendant BAUSCH & LOMB were put on notice of the high risk to consumers and users of the PRODUCTS after the completion of a major clinical trial known as the Boston Fever Study, which was the basis of the FDA approval of the over the counter sale of the PRODUCTS. Specifically, Defendant BAUSCH & LOMB, by and through its officers, directors, employees and/or managing agents, knew that there were cases of Stevens-Johnson Syndrome and Erythema Multiforme in the clinical trials but did not report them and misrepresented the true incidence of serious mucocutaneous reactions associated with the PRODUCTS.

17. Prior to March 27-28, 2011, the officers, directors, employees and/or managing agents of Defendant BAUSCH & LOMB were aware of the high frequency of Stevens-Johnson Syndrome and Erythema Multiforme and the risk of injury or death to consumers and users of the PRODUCTS. The officers, directors, employees and/or managing agents of Defendant BAUSCH & LOMB were put on notice of the high risk to consumers and users of the PRODUCTS by the numerous claims and lawsuits filed by consumers and users of the PRODUCT who were severely injured or killed as a result of ingesting the drug. Defendant BAUSCH & LOMB and its officers, directors, employees and/or managing agents knew the reasons why the PRODUCTS continued to cause Stevens-Johnson Syndrome and Erythema Multiforme and yet chose to take no corrective action

COMPLAINT                                               CASE NO:
Page 6 of 15

because Defendant BAUSCH & LOMB determined that such action would decrease the companies' profitability and be too costly when compared to litigating the resulting claims and lawsuits by consumers and users of the PRODUCTS.

18. Prior to March 27-28, 2011, the officers, directors, employees and/or managing agents of Defendant BAUSCH & LOMB knew or should have known that the PRODUCTS, was substandard and would cause consumers and users who used the PRODUCTS in a foreseeable manner death and serious injury. Moreover, the officers, directors, employees and/or managing agents of Defendant BAUSCH & LOMB knew or should have known that the PRODUCTS was defective and extremely dangerous with the likely result of serious bodily injury and/or death to the PRODUCT's users and consumers. The officers, directors, employees and/or managing agents of Defendant BAUSCH & LOMB knew prior to this incident, and even prior to the manufacture of the PRODUCTS, of the availability of safer, affordable alternative designs for the PRODUCTS, which would have reduced or eliminated the risk of severe injuries and/or death to its consumers and users.

19. Despite this knowledge, Defendant BAUSCH & LOMB, by and through its officers, directors, employees and/or managing agents, failed to recall the PRODUCTS, issue safety bulletins to the public, or even advise or warn purchasers by providing warnings of the severe risk of injury or death from use of the PRODUCTS present at the time of its original manufacture and sale. Although the officers, directors, employees and/or managing agents of Defendant BAUSCH & LOMB were aware of the need to recall the PRODUCTS, issue public safety bulletins, and/or provide adequate warnings, Defendant BAUSCH & LOMB, through the decisions of its officers, directors, employees and/or managing agents, acted in conscious disregard of the rights and safety of consumers and users by

COMPLAINT                                              CASE NO:
Page 7 of 15

failing to utilize available safer alternative designs, warn of the hazards, and/or recall the PRODUCTS prior to the subject incident.

20. At all times mentioned herein, the officers, directors, and/or managing agents of Defendant BAUSCH & LOMB authorized and/or ratified the conduct of their employees who knew of the growing number of serious injuries and deaths to consumers and users resulting from the PRODUCTS and the need for additional warnings. Further, at all times mentioned herein, the officers, directors, and/or managing agents of Defendants BAUSCH & LOMB authorized and/or ratified the conduct of their employees who knowingly failed to provide warnings and/or recall Defendant BAUSCH & LOMB's defective PRODUCTS, in spite of its knowledge of the grave danger and the availability of technically and economically feasible alternatives to prevent death or serious bodily injury to consumers and users.

21. As a result of Defendant BAUSCH & LOMB's conscious disregard of consumer safety, by and through the actions and inactions of their officers, directors, employees and/or managing agents, Plaintiffs were unaware of the hazardous and defective condition of the products. Had Plaintiffs been advised of problems with the PRODUCTS, Plaintiff SABRA HANIEF would have never have administered the PRODUCTS and thus would have avoided the severe and permanent injuries which resulted.

22. The PRODUCTS which Plaintiff SABRA HANIEF used were defective when placed on the market by Defendant BAUSCH & LOMB, and was of such a nature that the defects would not be discovered in the normal course of inspection and use by consumers and users thereof.

23. The PRODUCTS which Plaintiff SABRA HANIEF used on or about March 27-28, 2011, were defective in design, testing, development, manufacture, fabrication, assembly, distribution, warnings, instructions, inspection, and/or

COMPLAINT                                         CASE NO:
Page 8 of 15

marketing and the injuries and damages sustained by Plaintiff SABRA HANIEF were caused by the defects in the PRODUCTS.

24.  On or about March 27-28, 2011, Plaintiff SABRA HANIEF used the PRODUCTS in a reasonably foreseeable manner. As a direct and proximate result of the defective condition of the PRODUCTS, as well as the conduct of Defendant BAUSCH & LOMB and its officers, directors, employees and/or managing agents, Plaintiff SABRA HANIEF was injured and hurt in her health, strength, and, activity, sustaining injuries to her body, and shock and injuries to her nervous system and person, all of which said injuries have caused and continue to cause Plaintiff SABRA HANIEF great physical, mental, and nervous pain and suffering, all to her general damage, in an amount in excess of the jurisdictional limits of this Court.

25.  As a direct and proximate result of the defective condition of the PRODUCTS, the conduct of Defendant BAUSCH & LOMB and its officers, directors, employees and/or managing agents, Plaintiff SABRA HANIEF was compelled to and did employ the services of hospitals, physicians, surgeons, nurses and the like, to care for and treat her, and did incur hospital, medical, professional and incidental expenses, and Plaintiffs are informed and believe and thereupon allege that by reason of her injuries, she will necessarily incur additional like expenses for an indefinite period of time in the future, the exact amount of said expenses will be stated according to proof.

26.  As a direct and proximate result of the aforesaid conduct of Defendant BAUSCH & LOMB and its officers, directors, employees and managing agents, Plaintiff SABRA HANIEF has sustained a loss of earnings, past, present and future, as well as the loss of earning capacity, the exact amount of said losses which will be proven at trial.

COMPLAINT                                              CASE NO:

27. The above-described conduct of Defendant BAUSCH & LOMB, by and through its officers, directors, employees and/or managing agents, was carried out recklessly and with conscious disregard of Plaintiffs' rights and of the safety of consumers and, therefore, Plaintiff SABRA HANIEF is entitled to an award of punitive damages in an amount sufficient to punish Defendant BAUSCH & LOMB in light of its financial condition, and to make an example of them.

## SECOND CAUSE OF ACTION
## NEGLIGENCE
### [By Plaintiff Sabra Hanief Against Defendant]

28. Plaintiffs re-allege as though fully set forth at length and incorporate by reference into this Cause of Action all of the allegations and statements contained in the preceding paragraphs of this Complaint.

29. At all times relevant to this Complaint, Defendant BAUSCH & LOMB was engaged in the business of and had a duty to manufacture, fabricate, design, assemble, sell, distribute, test, inspect, market, warrant, warn, instruct, and/or advertise the PRODUCTS, in a reasonable manner, and which Defendants BAUSCH & LOMB knew, or in the exercise of reasonable care should have known, would be used without inspection for defects in its manufacture or design.

30. At all times mentioned herein, Defendant BAUSCH & LOMB, by and through its officers, directors, employees and/or managing agents, negligently, recklessly, and/or carelessly manufactured, fabricated, designed, assembled, distributed, tested, sold, inspected, marketed, warranted, warned, instructed, and/or advertised the PRODUCTS, in that the same was capable of causing and in fact did cause personal injuries to the consumer and/or user thereof while being used in a manner reasonably foreseeable, thereby rendering the same unsafe and dangerous for use by the consumer and/or user. Defendant BAUSCH & LOMB also failed to recall the PRODUCTS, or warn consumers of the risk of

COMPLAINT  CASE NO:
Page 10 of 15

serious injury or death from continued use of the products after having notice of an alarming number of injuries and deaths from using the PRODUCTS.

31. As a direct and proximate result of the above-described conduct of Defendant BAUSCH & LOMB, and the defects in the products, Plaintiff SABRA HANIEF suffered injury to her health, strength, and activity, sustained injuries to her body, and shock and injury to her nervous system and person, thereby causing her great and continuous physical, mental and nervous pain and suffering, all to her general damage, in an amount in excess of the jurisdictional limits of this Court.

32. As a direct and proximate result of the conduct of the Defendant BAUSCH & LOMB, as aforesaid, Plaintiff SABRA HANIEF was compelled to and did employ the services of hospitals, physicians, surgeons, nurses and the like, to care for and treat her, and did incur hospital, medical, professional and incidental expenses. Moreover, because of her injuries, Plaintiff SABRA HANIEF will necessarily incur additional expenses for an indefinite period of time in the future, the exact amount of which will be stated according to proof at trial.

33. As a direct and proximate result of the aforesaid conduct of Defendant BAUSCH & LOMB, acting by and through its officers, directors and managing agents, Plaintiff SABRA HANIEF has sustained a loss of earnings, past, present and future, as well as the loss of earning capacity, the exact amount of said losses which will be proven at trial.

34. The above-described conduct of Defendant BAUSCH & LOMB, by and through its officers, directors, employees and/or managing agents, was carried out recklessly and with conscious disregard of Plaintiff's rights and of the safety of consumers and, therefore, Plaintiff SABRA HANIEF is entitled to an award of

COMPLAINT  CASE NO:
Page 11 of 15

punitive damages in an amount sufficient to punish Defendant BAUSCH & LOMB in light of its financial condition, and to make an example of them.

## THIRD CAUSE OF ACTION
## BREACH OF WARRANTY
### [By Plaintiff Sabra Hanief Against Defendant]

35. Plaintiffs re-allege as though fully set forth at length and incorporate by reference into this Cause of Action all of the allegations and statements contained in the preceding paragraphs of this Complaint.

36. Defendant BAUSCH & LOMB, by and through its officers, directors and managing agents, impliedly and expressly warranted to Plaintiffs and each consumer and/or user that the PRODUCTS were fit for the purpose for which they were to be used and were free from design and manufacturing defects to consumers and users thereof.

37. As stated in detail above and re-alleged herein, the PRODUCTS were not free from such defects, nor fit for the purpose for which they were to be used, and were in fact, defectively manufactured and designed and imminently dangerous to consumers and users, including Plaintiff SABRA HANIEF, and were capable of causing, and in fact did cause, injuries to the users and consumers thereof, while being used in a manner reasonably foreseeable, thereby rendering same unsafe and dangerous for use by consumers and/or users.

38. As a direct and proximate result of the above-described breaches of warranties by Defendant BAUSCH & LOMB, and by and through its officers, directors, employees and/or managing agents, and the defective condition of the PRODUCTS, Plaintiff SABRA HANIEF suffered injury to her health, strength, and activity, sustained injuries to her body, and shock and injury to her nervous system and person, thereby causing her great and continuous physical, mental, and

nervous pain and suffering, all to her general damage in an amount in excess of the jurisdictional limits of this Court.

39. As a direct and proximate result of the above-described breaches of warranties by Defendants BAUSCH & LOMB, acting by and through its officers, directors, employees and/or managing agents, and the defective condition of the PRODUCTS, Plaintiff SABRA HANIEF was compelled to and did employ the services of hospitals, physicians, surgeons, nurses and the like, to care for and treat her, and did incur hospital, medical, professional and incidental expenses, and, because of her injuries, will necessarily incur additional expenses for an indefinite period of time in the future, the exact amount of said expenses will be stated according to proof at trial.

40. As a direct and proximate result of the above-described breaches of warranties by Defendant BAUSCH & LOMB, by and through its officers, directors and/or managing agents, Plaintiff SABRA HANIEF has sustained a loss of earnings, past, present and future, as well as the loss of earning capacity, the exact amount of said losses will be proven at trial.

41. As aforementioned in this Complaint, and re-alleged herein, the above-described breaches and conduct of Defendant BAUSCH & LOMB, by and through its officers, directors, employees and/or managing agents, were carried out recklessly and with conscious disregard of Plaintiff's rights and of the safety of consumers and, therefore, Plaintiff SABRA HANIEF is entitled to an award of punitive damages in an amount sufficient to punish Defendant BAUSCH & LOMB, in light of its financial condition, and to make an example of them.

## FOURTH CAUSE OF ACTION
## LOSS OF CONSORTIUM
### [By Plaintiff Mohammed Hanief Against Defendant]

42. Plaintiffs re-allege as though fully set forth at length and incorporate

COMPLAINT                                             CASE NO:
Page 13 of 15

by reference into this Cause of Action all of the allegations and statements contained in the preceding paragraphs of this Complaint.

43. Plaintiffs SABRA HANIEF and MOHAMMED HANIEF have been married, and at all times relevant to this action were, and are now, husband and wife.

44. Prior to suffering the injuries proximately caused by the PRODUCTS, Plaintiff SABRA HANIEF was able and did perform duties as a spouse. Subsequent to the injuries, and as a proximate result thereof, Plaintiff SABRA HANIEF has been unable to perform the necessary duties as a spouse and the work and services usually performed in the care, maintenance, and management of the family home, and she will be unable to perform such work, service and duties in the future. As a proximate result thereof, MOHAMMED HANIEF has been permanently deprived and will be deprived of the consortium of his spouse, including the performance of duties, all to his damages, in an amount presently unknown but which will be proved at the time of trial.

45. As a direct and proximate result of the acts of Defendant BAUSCH & LOMB, and the severe injuries caused thereby to Plaintiff SABRA HANIEF, Plaintiff MOHAMMED HANIEF has suffered, and for a long period of time will continue to suffer, loss of consortium, including, but not limited to, loss of services, marital relations, society, comfort, companionship, love and affection of said spouse, and has suffered severe mental and emotional distress and general nervousness as a result thereof.

## V.
## PRAYER FOR RELIEF

WHEREFORE, pursuant to the First, Second, Third, and Fourth Causes of Action, Plaintiffs SABRA HANIEF and MOHAMMED HANIEF pray for judgment as follows:

COMPLAINT                                          CASE NO:
Page 14 of 15

1. For a jury trial;

2. For economic damages, according to proof;

3. For general damages, including but not limited to the cost of past and future medical treatment and lost earnings and loss of earning capacity, according to proof;

4. For an award of exemplary damages, in an amount properly calculated to punish said Defendant for their despicable conduct and conscious disregard for the safety of others, and to deter any such despicable conduct and conscious disregard for the safety of others in the future.

5. For costs of suit incurred herein;

6. For prejudgment interest according to proof; and

7. For such other and further relief as the Court may deem just and proper.

Date: 26 March 2013                    **THE EDGAR LAW FIRM**

*[signature]*

Donald S. Edgar, Esq.
Jeremy R. Fietz, Esq.
Rex Grady, Esq.
Attorneys for Plaintiff

COMPLAINT                              CASE NO:
Page 15 of 15